IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALAN BONET FERNÁNDEZ,

Plaintiff

v.

WARNER-LAMBERT COMPANY, AKA
PFIZER PHARMACEUTICALS, INC.
AKA PFIZER CORP., AKA PFIZER
GLOBAL MANUFACTURING,
MEDICAL CARD SYSTEM INC.,

Defendants

CIVIL 04-1678 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court pursuant to a directive to the parties to file respective motions for judgment on the administrative record. (Docket No. 14.) On November 21, 2005, plaintiff Alan Bonet Fernández (hereinafter "Bonet" or "plaintiff") filed his motion for judgment on the administrative record. (Docket No. 24.) Defendants Warner-Lambert and/or Pfizer Corp. and/or Pfizer Pharmaceuticals, Inc. and/or Pfizer Global Manufacturing[1] (hereinafter "Pfizer") and Medical Card System, Inc. (hereinafter "MCS") (collectively "defendants") filed their motion for judgment on the claim record on December 21, 2005. (Docket No. 30.) This matter was referred to me for a report and recommendation on January 19, 2006. (Docket No. 34.) Having considered the arguments of the parties, the evidence in the record

---

[1] Since Pfizer and Warner Lambert merged in 2000, the correct name of the company is Pfizer Pharmaceuticals LLC. See http://www.pfizer.com/pfizer/history/2000.jsp.

CIVIL 04-1678 (JAG)                                         2

and for the reasons set forth below it is my recommendation to deny Bonet's motion for judgment on the administrative record and grant defendants' cross motion for judgment on the claim record.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff Alan Bonet Fernández was born in 1962. Bonet worked as Junior Manufacturer Operator for Warner Lambert from 1989 until 1998. (Docket No. 18, Sealed Ex. at 187.)

2. Pfizer maintains a Long Term Disability Benefits Plan (hereinafter "LTD" or "Plan") for its employees. (Docket No. 30, at 3, ¶ 2.)

3. MCS as claims administrator "has the discretionary authority to determine the eligibility for benefits, to determine whether [the employee] ha[s] or not an acceptable disability risk . . . and interprets the terms of the Plan." (Docket No. 22-2, at 13, ¶ 4.)

4. Bonet participated in Pfizer's LTD. (Docket No. 1, at 3, ¶ 9.)

5. In March 1998, Bonet requested non-occupational disability leave due to a lower back condition. At that time he received six months of short term disability benefits. (Docket Nos. 1, at 4, ¶ 16; 24, at 3, ¶ 2; 30, at 4, ¶ 7.)

6. On April 21, 1998, MCS requested Bonet to take a Functional Capacity Evaluation (hereinafter "FCE"). This evaluation took place on May 1, 1998. Its results showed that Bonet was able to work at a "Medium Physical Demand Level" for eight hours per day. (Docket Nos. 24, at 6-7, ¶ 5; 30, at 5, ¶ 8.)

7. On August 18, 1998, Bonet submitted an LTD benefits claim alleging lower back problems that prevented him from working. Bonet submitted along with his claim an Attending Physician's Statement stating that he had "progressive back pain" symptoms that prevented him from working. (Docket Nos. 1, at 5, ¶ 18; 24, at 4, ¶ 2; 30, at 5, ¶ 9.)

CIVIL 04-1678 (JAG)                    3

8.  On October 24, 1998, MCS requested Bonet to have a second FCE. This FCE took place on November 6, 1998. Its results showed that Bonet was able to work at a "Medium Physical Demand Level" for eight hours per day. (Docket No. 30, at 5, ¶ 10.)

9.  On November 10, 1998, another physician reviewed plaintiff's claim record as an independent medical consultant, determining that Bonet may perform his regular duties without lifting more than 50 pounds. (Docket No. 30, at 5, ¶ 11.)

10. On December 3, 1998, another medical evaluation was conducted, which determined that Bonet was able to perform his regular duties at a Medium Physical Demand Level for eight hours per day without lifting more than 50 pounds. (Docket No. 30, at 5, ¶ 12.)

11. On December 9, 1998, MCS informed Bonet that based on the medical information in his record he may return to work. Bonet was requested to attend a meeting on December 15, 1998. On that date, Bonet presented another medical evaluation dated November 14, 1998, that stated that he was unable to lift, carry, push or handle objects due to weakness in his hands; that his condition will continue to deteriorate and his prognosis was poor. (Docket Nos. 24, at 7, ¶ 4; 30, at 6, ¶¶ 13-14.)

12. On December 31, 1998, MCS notified Bonet the denial of his LTD benefits claim because he was not totally disabled as defined on the LTD plan. MCS notified that he was able to return to work with certain modifications. (Docket Nos. 24, at 7, ¶ 4; 30, at 6, ¶ 15.)

13. On January 21, 1999, there was another medical evaluation that concluded that Bonet was unable to return to work based on another medical evaluation and prognosis conducted by Dr. Dwight M. Santiago. (Docket Nos. 24, at 8, ¶ 2; 30, at 6-7, ¶ 16.)

14. On March 1, 1999, Bonet submitted his first appeal of MCS' LTD benefits denial stating that this decision was contrary to the opinion of his treating physicians. He attached a copy of the medical records of November 1998 and December 1998 from the

CIVIL 04-1678 (JAG)                           4

neurologist and the FCE of November 1998. (Docket No. 30, at 7, ¶ 17.)

15. On March 10, 1999, MCS requested Bonet to take a third FCE. This FCE took place on March 22, 1999. Its results showed "a work capacity level of medium duty with restrictions." (Docket No. 30, at 7, ¶ 18.)

16. On April 19, 1999, an independent medical consultant recommended denial of Bonet's first appeal. On April 27, 1999, MCS notified Bonet the denial of his LTD benefits, because he was not totally disabled as defined by the plan. (Docket Nos. 1, at 6, ¶ 24; 30, at 7, ¶¶ 19-20.)

17. On July 15, 1999, Bonet submitted another medical evaluation that stated that he was unable to work even with the restrictions set forth on the FCE. MCS considered this additional medical evaluation as a second appeal. (Docket Nos. 1, at 7, ¶ 25; 24, at 9-10, ¶ 5; 30, at 8, ¶ 21.)

18. On September 28, 1999, Bonet had an independent medical evaluation which concluded that he had a minimal impairment. On October 1, 1999, another independent medical evaluation was conducted, which concluded that basically he had a minimal impairment. (Docket No. 30, at 8-9, ¶¶ 24-25.)

19. On November 30, 1999, another independent medical evaluation concluded that Bonet's LTD benefits must be denied because he was not totally disabled. On December 17, 1999, MCS notified its final decision denying Bonet's second appeal. (Docket Nos. 1, at 7, ¶ 26; 30, at 9, ¶¶ 26-27.)

20. Bonet was found totally disabled by the Social Security Administration. (Docket No. 1, at 6, ¶ 23.)

21. After exhausting all administrative remedies, on July 6, 2004, Bonet filed a complaint in this court requesting monetary damages and injunctive relief, pursuant to the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1132. (Docket No. 1, at 1, ¶ 1.)

CIVIL 04-1678 (JAG)                             5

22. On September 14, 2005, this court entered partial judgment dismissing the breach of fiduciary duty claim and other claims under sections 502(a)(3) and 503 of ERISA. (Docket Nos. 13 & 15.)

23. On the same date, this court ordered to remove the case from ordinary civil proceeding track and to be decided upon the administrative record. (Docket No. 14.)

24. Bonet presents two issues in his memorandum in support of plaintiff's motion for judgment on the administrative record: (i) whether he is totally disabled under the terms of Warner Lambert's Long Term Disability Benefits Plan; and (ii) whether MCS acted arbitrarily and capriciously in denying the Long Term Disability Benefits to Bonet, relying on a Functional Capacity Evaluation without taking into account plaintiff's physical disabilities or the medical evidence presented, and without offering him the benefit of a rehabilitation program. (Docket No. 24, at 2, ¶¶ 1 & 2.)

## II. STANDARD OF REVIEW

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (quoting Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90 (1983); Mass. Mut. Life Ins. Co. v. Russel, 473 U.S. 134, 148 (1985)). Pursuant to section 1132(a)(1)(B) of ERISA a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Actions brought under this section must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority

CIVIL 04-1678 (JAG)                    6

to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. at 115.  When the benefit plan gives the administrator or fiduciary, discretionary authority, the arbitrary and capricious standard of review is applicable.  <u>Id.</u>; see <u>Leahy v. Raytheon Co.</u>, 315 F.3d 11, 15 (1st Cir. 2002); <u>Rodríguez-Abreu v. Chase Manhattan Bank, N.A.</u>, 986 F.2d 580, 583 (1st Cir. 1993).  The parties have agreed that this court should apply the arbitrary and capricious standard of review because the LTD gives discretionary authority to MCS, which is the claims administrator.  (Docket Nos. 24, at 11, ¶ 2; 30, at 11-12, ¶ 3.)

To review a denial of benefits under the arbitrary and capricious standard of review, I must consider the arguments and evidence that were presented before the administrator of the plan. <u>De Dios Cortés v. MetLife, Ins.</u>, 122 F. Supp. 2d 121, 129-30 (D.P.R. 2000).  Therefore, MCS' decision can "be upheld if it was within [its] authority, reasoned, and 'supported by substantial evidence in the record.'" <u>Doyle v. Paul Revere Life Ins. Co.</u>, 144 F.3d 181, 184 (1st Cir. 1998) (quoting <u>Associated Fisheries of Me., Inc. v. Daley</u>, 127 F.3d 104, 109 (1st Cir. 1997)).  Thus, there must be "evidence reasonably sufficient to support a conclusion." <u>Doyle v. Paul Revere Life Ins. Co.</u>, 144 F.3d at 184.  In turn, "contradictory evidence does not necessarily defeat a finding of sufficiency." <u>De Dios Cortes v. MetLife, Inc.</u>, 122 F. Supp. 2d at 129.

Under the arbitrary and capricious standard of review  the question is "not which side [I] believe is right, but whether [defendants] had substantial evidentiary

CIVIL 04-1678 (JAG)                          7

grounds for a reasonable decision in its favor." Doyle v. Paul Revere Life Ins. Co., 144 F.3d at 184.

### III.  DISCUSSION

#### A.  Long Term Disability Plan

Having set forth the proper standard of review, I turn now to the issue in this complaint: whether MCS' decision to deny LTD benefits was arbitrary and capricious. Pfizer provides a Long Term Disability Benefits Plan, governed by ERISA provisions. The LTD provides coverage to employees which are totally disabled as defined in the plan. Pfizer administers the LTD and MCS is its claims administrator. The benefits are provided "[i]f [the employee] become[s] totally disabled, after the six months' qualification period." (Docket No. 22-2, at 8, ¶ 5.) Bonet alleges that "there is an obvious incongruence" in the definition of "total disability" between the Warner-Lambert's Long Term Disability Benefits Plan (Docket No. 17-2) and the Long-Term Disability Benefits Plan, Manual for Puerto Rico (Docket No. 22-2). (Docket No. 24, at 6, ¶ 2.)

Warner-Lambert's Long Term Disability Benefits Plan defines "Total Disability or Totally Disabled" as:

> The complete inability of an Employee to perform substantially all of the material duties of his or her regular occupation as it is generally performed in the national economy, or perform another occupation for which the Employee is qualified and can earn at least 75% of pre-disability Compensation. The Covered Employee cannot

CIVIL 04-1678 (JAG)                              8

>     engage in any other employment except as provided under
>     the rehabilitation program described in Article 14.

(Docket No. 17-2, at 7, ¶ 3.)

In turn, the Long Term Disability Benefits Plan, Manual for Puerto Rico, which is the summary plan description pursuant to 29 U.S.C. § 1022, defines "total disability" as:

>     During the initial six months' qualification period and the first two during which benefits are paid to [the employee] under the Plan, [the employee] will be considered totally disabled if [he/she] cannot perform the basic tasks of [his/her] occupation and [is] not involved in any additional occupation where [the employee] earn[s] some type of salary or income.

(Docket No. 22-2, at 9, ¶ 3.)

It is obvious that the LTD plan applicable to Bonet is the Manual for Puerto Rico, since he was employed at a participating company in this location. "Courts have consistently held that the summary plan description is controlling despite the existence of other official booklets that contradict the plan or discuss additional requirements." Santiago Rolón v. Chase Manhattan Bank, 912 F. Supp. 19, 22 (D.P.R. 1996).

Further, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). In construing the applicability of the plan the administrator must view

CIVIL 04-1678 (JAG)                              9

the specific terms and conditions contained therein. Thus, defendants determined that Bonet was not totally disabled inasmuch he does not comply with the definition contained in the summary plan.

Seeking to overturn defendants' decision, Bonet filed a complaint in this court "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132 (a)(1)(B). The court ordered that the case be decided upon the administrative record in lieu of trial. (Docket No. 14.) Therefore, I have the benefit of reviewing the entire administrative record.

### B. Bonet's Medical Evaluations

(Sealed Documents on Dockets Nos. 18 and 23)

1. As Junior Manufacturing Operator, Bonet's position requires, among other functions, to assist in the set up, assembly, disassembly, and cleaning of the manufacturing equipment; move materials to the manufacturing area; participate in the process of handling hazardous materials and waste; and operate the manufacturing equipment of his department. (Docket No. 18, at 189-90.)

2. Bonet's physical demands are to: walk and stoop, kneel or crouch, occasionally required to stand, sit, use hands to finger, handle, or feel objects, tools, or controls and reach with hands and arms; lift and/or move up to 50 pounds. (Id. at 190.)

3. On August 15, 1996, Bonet was diagnosed with lumbo sacral radiculopathy: LT S1 chronic root lesion and bilateral L5 root irritation. Electrodiagnostic Studies interpretation. (Id. at 164.)

4. On March 13, 1998, another doctor determined that there were no significant changes in comparison with his examination and the previous one. MRI of the lumbosacral spine signed by José N. Lazaga, MD. (Id. at 168.)

CIVIL 04-1678 (JAG)                              10

5.  Medical evaluation dated March 9, 1998, concluded that Bonet was unable to return to work from March 2, 1998 until March 6, 1998. (Id. at 382.)

6.  Thereafter, Bonet received short term disability benefits. (Docket Nos. 1, at 4, ¶ 16; 24, at 3, ¶ 2; 30, at 4, ¶ 7.)

7.  On November 6, 1998, Bonet underwent an FCE. Its results were that "Mr. Bonet's impairment does not appear to be having a significant impact on his functional ability." Letter dated November 17, 1998. (Docket No. 18, at 235.)

8.  This FCE concluded that Bonet "is able to work at the Medium Physical Demand Level for an 8 hour day . . . may perform his regular duties. However, He mustn't deal with weights >50 lbs." Bonet's duration of modification was set at six months. Request for job modification dated November 17, 1998. (Id. at 175.)

9.  The company further sent a letter stating that "based on the medical information in your file and the results of the Functional Capacity study, the Disability Management Department has determined that you may return to work under modification of tasks." Letter sent to Alan Bonet Fernández, dated December 9, 1998. (Docket No. 23, at 90.)

10. Bonet's treating physician stated that he has a history of severe low back pain radiating to left leg since May 1996 and his prognosis was poor. Letter sent by Dr. Luce M. Villafañe Carmona, dated December 28, 1998. (Docket No. 18, at 162.)

11. The company considered Bonet's treating physicians' opinion, and decided that "[a]fter evaluating your medical file and the results of functional capacity, it has been determined that you are capable to return to work under modifications of tasks." Letter sent to Alan Bonet Fernández, dated December 31, 1998. (Docket No. 23, at 85-86.)

12. Another of Bonet's treating physician Dr. Dwight M. Santiago stated that Bonet "is not capable at the present in undergoing a FCE where spinal/back strength will be tested due to risk of

CIVIL 04-1678 (JAG)              11

reinjury." Medical Evaluation of Dr. Dwight M. Santiago, dated March 17, 1999. (Docket No. 18, at 376.)

13. The second FCE revealed a diagnosis of Lumbar HNP; work capacity level of medium duty with restriction. Functional Capacity Evaluation, dated March 22, 1999. (Id. at 219.)

14. Dr. Rafael E. Seín determined that Bonet has a work capacity level of medium duty with restrictions. Letter sent to Mrs. Maribel Berríos, dated April 15, 1999. (Id. at 216, ¶ 4.)

15. After this FCE, MCS sent a letter stating that Bonet is "not totally disabled to perform the functions of [his] employment, according to the first definition of the [LTD]." Letter sent to Alan Bonet Fernández, dated April 27, 1999. (Docket No. 23, at 69-70.)

16. On June 23, 1999, Dr. Dwight M. Santiago wrote an extensive assessment of Bonet's condition. He stated that Bonet has been his patient since November 9, 1998, and that he has a history of a progressively worse low back and left leg pain syndrome since 1996 related to work functions but no specific traumatic injury. He said that Bonet has been disabled since March 1998. Medical Report dated June 23, 1999. (Docket No. 18, at 130-36.)

17. Dr. Dwight M. Santiago enumerated the medical problems of Bonet as reported by the neurologist: chronic low back pain related to herniated lumbar disc [L5-S1], degenerative disc disease [L3-L4, L4-L5] and poly-radiculopathy [bilateral L5 and left S1] as per EMG; bilateral lower extremity peripheral neuropathy; bilateral median nerve neuropathy with carpal tunnel syndrome; chronic cervical pain with myositis; major depression and muscle weakness, fatigability and functional limitations. (Id. at 130-31, ¶ 3.)

18. Dr. Dwight M. Santiago further stated that Bonet has significant and generalized back and neck myositis, reduced range of motion of the spine and deconditioning, and left sided thoracic outlet syndrome. Bonet's "aerobic capacity is considered to be in the below average [fair] aerobic fitness classification . . . . Bonet was disabled in performing his normal work functions and should continue in a resting status." (Id. at 131-132.)

CIVIL 04-1678 (JAG)                    12

19. Dr. Dwight M. Santiago strongly disagreed with the FCE evaluations stating that: "[a] problem in all FCE reports is that the patient's diagnosis is limited to the herniated lumbar disc disorder. No mention is made about the other diagnosis such as bilateral lower extremity neuropathy, poly-radiculopathy [bilateral L5 and left S1], cervical pain syndrome, bilateral carpal tunnel syndrome, and left thoracic outlet syndrome. These other contributory medical problems are no doubt affecting Mr. Bonet's work capacity and functional capacity but they have not been considered in the analysis and recommendations of any of the evaluators." (Id. at 134, ¶ 2.)

20. Dr. Dwight M. Santiago said that: "[a]nother major problem is the significant differences in the physical examination between [the] FCE evaluator who is a non-medical personnel and that of a medical examiner with expertise in the musculoskeletal field of medicine." "It is a fact that this patient's impairments are affecting many of his major activities of daily living and is at present unable to perform the essential tasks that define his current position at work, nor the level of work that the FCE's have established [Medium work]. (Id. at 134, ¶ 3; 136, ¶ 2.)

21. Dr. Dwight M. Santiago concluded that "Bonet is not capable of performing tasks of a Medium work classification even with the established restrictions advised by the FCE's. This patient can only perform light to sedentary [office type] work." (Id. at 136, ¶ 3.)

22. Bonet, based on Dr. Dwight M. Santiago's evaluation requested a sedentary position or disability benefits. Letter sent to Mr. Alcides A. Reyes Glestra dated July 14, 1999. (Docket No. 23, at 118.) Letter sent to Myrna De Jesús, dated July 14, 1999. (Id. at 129.)

23. Taking into consideration Dr. Dwight M. Santiago's assessment, defendants ordered another independent medical evaluation. This evaluation concluded that: "there is no deficit that explains the subjective symptoms. The diagnostic tests fail to correlate for a Peripheral Neuropathy in the legs or a bilateral Carpal Tunnel Syndrome. The only finding is a positive Lassegue maneuver on the left leg for lumbar nerve stretching pain that does not

CIVIL 04-1678 (JAG)              13

   reproduce it on the sitting position.  There is no gross loss of strength, no loss of muscle mass, has normal reflexes and no sensory deficit." "In regard to Dr. Dwight Santiago['s] medical report, he fails to perform a thorough physical examination and provide proper objective medical evidence to demonstrate the diagnosis of Bilateral Lower Extremities Neuropathy, Cervical Pain Syndrome, Bilateral Carpal Tunnel Syndrome and Left Thoracic Outlet Syndrome." Independent Medical Evaluation Dr. Rafael E. Seín, dated October 26, 1999. (Docket No. 18, at 215, ¶¶ 1, 3.)

24. MCS sent a letter to Bonet summarizing the findings of two medical evaluations.  The letter stated that: "[t]he results of the evaluation performed by Dr. [Raul] López indicates that you present a minimum of impairment according to the Impairment and Disability Guidelines of the American Medical Association (AMA).  You are in contact with reality although moderately depressed and stable.  Your condition warrants treatment but does not disable you from working. . . . [T]he results of the evaluation performed by Dr. Seín indicate that you do not present deficiencies explaining the subjective symptoms.  Further, the diagnosis of Periferal Neuropathy in your legs and the Bilateral Carpal Tunnel Syndrome could not be clinically confirmed in the physical examination performed.  After evaluating the evidence included in your file, we have found that you are not disabled to perform the functions of your job according to the first definition of the Warner-Lambert disability plan." Letter to Alan Bonet Fernández, dated December 17, 1999. (Docket No. 23, at 60-61, ¶ 2.)

### C.  Treating Physicians' Opinion

"[P]lan administrators are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003).  In addition, ERISA does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Id. at 831.  Therefore, although the administrator may not arbitrarily refuse to consider

CIVIL 04-1678 (JAG)                                14

certain evidence in the record, I may not recommend overturning its refusal unless it was arbitrary and capricious.

Bonet argues that his physicians have had a prolonged relationship treating his conditions, and thus defendants acted arbitrarily and capriciously by willfully ignoring the evidence and denying benefits. (Docket No. 24, at 13, ¶ 4.) Bonet compares the ruling in <u>Black & Decker Disability Plan</u> with the case at hand, when the court stated: "the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when . . . the relationship between the claimant and the treating physician has been of short duration." <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. at 832.

Bonet's contention, however, proved wrong by the evidence in the record. In this case, the administrator indeed considered the treating physicians' opinions and even ordered further functional capacity evaluations taking into consideration such opinions. More than once, the FCE revealed that although Bonet had an impairment he was able to perform in a medium capacity level with job modifications. There is no arbitrariness nor capriciousness in such determination. Proper evaluations were performed in order to determine the probability of allowing Bonet to return to work. MCS decided that Bonet does not meet the LTD's definition of "totally disabled," and therefore was not entitled to its benefits.

A good example of MCS consideration of Bonet's treating physician is that after reviewing Dr. Dwight M. Santiago's assessment, Bonet was referred to an

CIVIL 04-1678 (JAG)                              15

independent medical evaluation with Dr. Rafael E. Seín. His conclusion was that Dr. Dwight M. Santiago "fail[ed] to perform a thorough physical examination and provide proper objective medical evidence to demonstrate the diagnosis of Bilateral Lower Extremities Neuropathy, Cervical Pain Syndrome, Bilateral Carpal Tunnel Syndrome and Left Thoracic Outlet Syndrome." (Docket No. 18, at 215, ¶ 3.)

Bonet alleges that defendants' denial of benefits is "in violation of the Plan provisions and ERISA, since plaintiff demonstrated that he is totally disabled and cannot perform the material duties of his occupation, or any other occupation, which his education, training and experience would reasonably allow." (Docket No. 24, at 9, ¶ 4.) Bonet further avers that MCS relied on the FCEs without referring him to an independent medical evaluation with a neurologist and neurosurgeon, which could have determined his "disabling pain or physical conditions." (Docket No. 24, at 13, ¶ 5.)

Plaintiff overlooks that MCS had ample authority to consider whether to afford deference to the treating physicians' opinions, and moreover, under the Black & Decker ruling, there is no such obligation. Functional Capacity Evaluations are reliable examinations that can determine with specificity whether the employee may perform the duties under his job description. A doctor, like a neurologist or neurosurgeon, may determine the "pain or physical conditions," like Bonet argues, but an FCE is important in determining proper adjustments needed in the workplace

CIVIL 04-1678 (JAG)                              16

to help this impaired employee in returning to work and perform his duties. That is the importance of subjecting an alleged disabled employee to an FCE.

Bonet contends that defendants "missed the fact that the LTD plan's definition of total disability indicated that [he must] be able to perform those duties for which he is qualified because of his academic preparation, training or experience." (Docket No. 24, at 15, ¶ 1.) Bonet misreads the definition of total disability in the LTD plan. The relevant part that Bonet construes in his favor states that: "[a]fter you have received the benefits of the plan for two years, you will be considered completely disabled if you cannot work in occupations or employment for which you are qualified or could be qualified in accordance to your academic preparation, training or experience." (Docket No. 22-2, at 9, ¶ 5.) In other words, first, the employee must be declared totally disabled and then, must have received benefits during two years and finally the determination of total disability is final if it is demonstrated that the employee cannot perform any occupation or employment. Thus, the second paragraph of the total disability definition is not yet applicable to Bonet.

It is my conclusion that defendants did not act arbitrarily or capriciously in denying Bonet's LTD benefits, inasmuch the evidence demonstrated that he was capable of performing in a medium capacity level with job modifications. It is on the sole judgment of the plan's administrator to decide whether to give substantive weight to the treating physicians' opinion and not to the independent medical evaluations. Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 32 (1st Cir.

CIVIL 04-1678 (JAG)                         17

2001). When, as in this case, there is ample evidence by means of several medical evaluations that concluded that plaintiff was not totally disabled, plans' administrators may rely on this evidence without abusing their discretion. There is ample evidence in the record that shows that Bonet was not totally disabled, despite the opinion of his treating physicians. There were three FCEs and two independent medical evaluations that concluded that he may perform in a medium capacity level. Furthermore, those FCEs and independent medical evaluations were performed taking into consideration his treating physicians' opinions.

### D. Rehabilitation Program

Bonet further avers that "MCS acted in bad faith in denying Plaintiff the benefit of a rehabilitation program." (Docket No. 24, at 15, ¶ 2.) Rehabilitation program is defined on the LTD plan as "[i]f [the employee] receive[s] benefits from the [LTD], [he/she] may be considered to participate in a rehabilitation program approved by [MCS]. [The] participation in an approved rehabilitation program must be agreed to in advance by [the employee] and [MCS]." (Docket No. 22-2, at 10, ¶ 5.)

I need not address whether defendants' decision to afford any rehabilitation program was arbitrary and capricious, because under the clear terms of the LTD plan, rehabilitation is afforded when the employee receives LTD benefits. In this case, I find that defendants correctly denied Bonet's LTD claim.

### E. Social Security Determination

Bonet avers that "a determination of disability by the Social Security Administration . . . is 'good evidence' which should be considered by the plan administrator when making a determination regarding disability benefits." (Docket No. 24, at 12, ¶ 4.) However, it is well established that "[a] finding of disability under the Social Security Act is not controlling evidence in a determination of disability benefits under an insured long term disability plan. . . ." Márquez-Massas v. Squibb Mfg., Inc., 344 F. Supp. 2d 315, 328 (D.P.R. 2004) (citing Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 215 (1st Cir. 2004)). Therefore, I need not go further.

### V. CONCLUSION

If the plan administrator's decision was reasonable in light of the evidence in the record, its decision will be upheld unless it constituted an abuse of discretion or the same meaning, if it was clearly arbitrary and capricious. In this case, there is no such showing. Therefore, in light of the foregoing, it is my recommendation that the court enter judgment in favor of defendants.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis

CIVIL 04-1678 (JAG)                                    19

for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 29th day of November, 2006.

S/ JUSTO ARENAS
Chief United States Magistrate Judge